IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Case No.

JARRID FRANKE

    Plaintiff,

v.

FIFTH AMENDED AND RESTATED NEWFIELD EXPLORATION COMPANY CHANGE OF CONTROL SEVERANCE PLAN
NEWFIELD EXPLORATION COMPANY CHANGE OF CONTROL SEVERANCE PLAN COMMITTEE; and
NEWFIELD EXPLORATION COMPANY CHANGE OF CONTROL SEVERANCE PLAN BENEFITS ADMINISTRATOR

    Defendants.

# COMPLAINT

Plaintiff Jarrid Franke ("Franke") by and through his attorneys, H&K Law, LLC, submits the following Complaint against Defendants Fifth Amended and Restated Newfield Exploration Company Change of Control Severance Plan and Newfield Exploration Company Change of Control Severance Plan Committee and states as follows:

## PARTIES

1. Mr. Franke is an individual who resides at 2000 Hughes Landing Blvd Unit 747, The Woodlands, Texas 77380.

2. Fifth Amended and Restated Newfield Exploration Company Change of Control Severance Plan is the plan that governs the severance pay benefits at issue in this action (the

1

"Plan"). By its own terms, the Plan is a severance pay plan covered by and subject to the Employment Retirement Income Security Act of 1974, as amended ("ERISA").

3. Newfield Exploration Company Change of Control Severance Plan Committee is the Plan Administrator for the Plan ("Plan Administrator"). The Plan Administrator members are located in Colorado and Texas and, upon information and belief, the Plan is administered out of Denver, Colorado.

4. The Benefits Administrator is an individual holding the title of Vice President, Human Resources with Ovintiv, Inc., who serves on the committee as one of the Plan administrators and is located in Denver, Colorado.

5. The Plan covers Texas and Colorado-based employees of the former Newfield Exploration Company ("Newfield"), now known as Ovintiv, Inc ("Ovintiv"). The Plan is self-funded through Ovintiv. Ovintiv's United States headquarters are located in Denver and the Plan provides that its agent for service of process is the CEO of Newfield, now known as Ovintiv. The former CEO of Ovintiv was located in Denver, Colorado and, upon information and belief, the newly appointed CEO resides in Canada.

## JURISDICTION

6. This Court has jurisdiction over the parties to this lawsuit because the underlying benefits decisions occurred in the State of Colorado and the Defendants reside in Colorado.

7. This Court has subject matter jurisdiction over this lawsuit under 28 U.S.C. § 1331 because it arises under a federal statute, ERISA, particularly 29 U.S.C. § 1132(a)(1)(B).

## GENERAL ALLEGATIONS

8. Mr. Franke worked for Newfield Exploration Company in Denver, CO, Tulsa, OK and The Woodlands, TX for 14 years, successfully, including a two-year college internship.

9. He was a dedicated, regular, full-time employee working as an Asset Manager, a non-operational leadership role, reporting directly to the Regional Vice President.

10. In this position, Mr. Franke was primarily a decision-maker with autonomy, responsible for and holding his team accountable for everything subsurface for the Arkoma and Williston oilfield assets (with about 900 wells combined), including budgeting ($1 million spending/approval authority), planning, approval, and reserves, as well as assistance with well life cycle planning for drilling, completion and facilities.

11. As an Asset Manager for Newfield, Mr. Franke also had direct access to executives through budgetary meetings where he presented asset results, structured goals, and defended the results at year end to determine compensation allocation for the asset.

12. He had 11 technical reports that spanned two different technical disciplines: Geologists and Reservoir Engineers.

13. As an Asset Manager, Mr. Franke was a covered employee under the Plan.

14. In February 2019, a change of control was triggered under the Plan when Ovintiv acquired Newfield.

15. Once a change in control was triggered, covered employees would be provided severance under the Plan if they suffered an involuntary termination or resigned with good reason.

16. Good reason under the Plan is met when there has been a "material reduction in the nature or scope of such Covered Employee's aggregate responsibilities from those applicable to such Covered Employee immediately prior to the date on which a Change of Control occurs." Section 2.1(i)(1) of the Plan (emphasis added) ("Good Reason").

17. Mr. Franke was involuntarily transferred from his Asset Manager position to a Manager position with Ovintiv.

18. Of the four Newfield Asset Managers, three were transferred to Senior Manager positions with Ovintiv.  Mr. Franke was the sole exception.  He was transferred to a Development Manager position reporting to one of the aforementioned Senior Managers.

19. At the time, Mr. Franke was unwilling to resign with Good Reason, although his transfer arguably met that criteria, due to the need to continue health insurance benefits.

20. In June, 2020, Ovintiv announced additional reductions and consolidations.

21. As part of this restructuring, Mr. Franke was involuntarily transferred again, to role of Facility and Water Manager, reporting directly to a Senior Manager, who was previously an Asset Manager at Newfield.  After serving in the role for 25 days, just prior to the applicable change of control deadline, Mr. Franke verified that a "change in material reduction of nature or scope had occurred within the Change of Control Plan." Section 2.1(i)(1) of the Plan.

22. As a Facility and Water Manager, Mr. Franke now had only six technical reports in only one discipline: facilities (which included water).  This was an operational leadership role with significantly less decision-making authority, minimal budgetary input and spending authority and no input into team compensation.

23. As a Facility and Water Manager, Mr. Franke no longer had access to executives because he was not involved in budgetary planning and he had to have spending authority approved by his Senior Manager (one of the four aforementioned previous Asset Managers at Newfield).

24. As a result, Mr. Franke resigned and submitted a claim under the Plan, seeking severance benefits for a resignation with Good Reason. Following Mr. Franke's resignation, the role of Facility and Water Manager was filled by a technical level employee with no previous leadership experience.

25. The Plan accepted Mr. Franke's claim as timely and processed it under the Plan's claim procedures.

26. The Plan appointed a Benefits Administrator, an individual, and the Committee as its Plan Administrator. Under the Plan's claims procedures, the Benefits Administrator had to first determine if Mr. Franke's entitlement to severance benefits was clear, without resort to the Committee. *See* Section 4 of Appendix A to the Plan.

27. Upon information and belief, Mr. Franke's supervisor told the Benefits Administrator that a change in scope of work had occurred for Mr. Franke and he believed that Mr. Franke's entitlement to severance benefits under the Plan was clear. The Benefits Administrator told Mr. Franke's supervisor that she agreed with him.

28. The Benefits Administrator, however, did not proceed with her opinion as required under the Plan's claim procedures. Instead, she submitted Mr. Franke's claim to the Plan Administrator for committee review.

29. The Plan Administrator initially denied Mr. Franke's claim and thereafter, Mr. Franke sought relevant documents through a written request dated November 3, 2020. See Exhibit A attached hereto.

30. Mr. Franke requested relevant documents as defined by the Plan terms and the ERISA regulations found at 29 C.F.R. § 2560.503-1(g)(vii)(D).

31. In particular, Mr. Franke requested documents that he should have been able to submit in order to support his claim to benefits under the Plan and documents that would demonstrate the Plan's compliance with its own claim's procedures. He knew that many, if not all, of these documents existed, but he did not have access to them.

32. Mr. Franke requested documents that should be considered as "submitted [or] considered, in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination." See 29 C.F.R. § 2560.503-1(m)(8)(ii).

33. Mr. Franke also requested documents that "demonstrate[] compliance with the administrative processes and safeguards required pursuant to paragraph (b)(5) of this section in making the benefit determination," which include documents that show whether "administrative processes and safeguards designed to ensure and to verify that benefit claim determinations are made in accordance with governing plan documents and that, where appropriate, the plan provisions have been applied consistently with respect to similarly situated claimants." See 29 C.F.R. § 2560.503-1(b)(5) and (m)(8)(iii).

34. The Plan and Plan Administrator denied Mr. Franke's request for relevant documents.

35. Accordingly, Mr. Franke was forced to complete the claims process without the benefit of this relevant information.

36. On January 25, 2021, the Plan Administrator issued is final determination, denying severance benefits to Mr. Franke under the Plan.

37. Mr. Franke has administratively exhausted the benefits claim procedures under the Plan.

38. Mr. Franke is entitled to severance benefits under the Plan for having resigned with Good Reason.

39. Mr. Franke also is entitled to production of the relevant documents sought and statutory penalties for each day the Plan and Plan Administrator have wrongfully failed to produce relevant documents, as requested.

40. All conditions precedent to the maintenance of this action have been met.

## FIRST CLAIM FOR RELIEF
### (ERISA Section 502(a) Claim for Benefits against the Plan)

41. Mr. Franke incorporates all allegations above as if stated in full herein.

42. Mr. Franke was a covered employee under the Plan.

43. Mr. Franke resigned with Good Reason in 2020 because his Facility and Water Manager position constituted a material reduction in the nature and scope of his aggregate responsibilities from those applicable to his Newfield Asset Manager position.

44. Mr. Franke is entitled to severance benefits under the Plan terms because he resigned with Good Reason.

45. Mr. Franke has exhausted his administrative benefits.

46. The Plan wrongfully denied Mr. Franke benefits in the Plan amount of $359,995.

## SECOND CLAIM FOR RELIEF
**(Breach of Fiduciary Duty against the Benefits Administrator and Plan Administrator)**

47. Mr. Franke incorporates all allegations above as if stated in full herein.

48. Both the Benefits Administrator and the Plan Administrator have a fiduciary duty to administer the Plan for the benefit of its participants and to administer the Plan in accordance with the Plan's claim procedures.

49. The Benefits Administrator failed to follow the Plan's Claim Procedures when she referred Mr. Franke's claim for benefits to the Plan Administrator despite her belief that his entitlement to severance benefits was clear.

50. The Plan Administrator failed to provide to Mr. Franke relevant documents, as alleged above, in violation of the applicable regulations.

51. Mr. Franke is entitled to the equitable relief of production of the relevant documents as sought in Exhibit A and to a determination that he is entitled to severance benefits under the Plan.

## THIRD CLAIM FOR RELIEF
**(ERISA Section 502(c) Claim for Penalties against the Benefits Administrator and Plan Administrator)**

52. Mr. Franke incorporates all allegations above as if stated in full herein.

53. ERISA requires Plan Administrators to provide certain Plan documents to participants within 30 days of written request for the same.

54. ERISA empowers the Secretary of Labor to issue regulations implementing ERISA.

55. The Secretary of Labor has issued regulations requiring Plans to produce relevant documents under 29 C.F.R. § 2560.503-1(m)(8).

56. Section 502(c) of ERISA states that a penalty is due to be paid by any administrator who fails or refuses to comply with a request for information which such administrator is required to furnish to a participant or beneficiary.

57. The Benefits Administrator and Plan Administrator failed to produce relevant documents to Mr. Franke as he requested in writing.

58. Mr. Franke is entitled to the statutory penalty in the amount of $110 per day since November 3, 2020.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff Mr. Franke respectfully requests that the Court enter judgment in his favor on his claims against the Defendants and award him the following relief:

- Pre- and post-judgment interest, costs and attorney's fees;
- Payment in the form of the full value of the severance benefits to which he is entitled under the Plan;
- Production of the relevant documents as requested in Exhibit A;
- Statutory penalties in the amount of $110 per day from November 3, 2020 until the date relevant documents are produced to Mr. Franke; and
- All other relief and damages as allowed by law.

DATED: August 17, 2021.

Respectfully submitted,

/s/ Susan P. Klopman
H&K Law, LLC
3900 E. Mexico Ave. Ste. 330
Denver, CO 80210
303.749.0659
sklopman@hklawllc.com

Plaintiff's address:
2000 Hughes Landing Blvd Unit 747
The Woodlands, Texas 77380.