IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 21-cv-2234-WJM-SKC

JARRID FRANKE,

    Plaintiff,

v.

FIFTH AMENDED AND RESTATED NEWFIELD EXPLORATION COMPANY CHANGE OF CONTROL SEVERANCE PLAN,
NEWFIELD EXPLORATION COMPANY CHANGE OF CONTROL SEVERANCE PLAN BENEFITS ADMINISTRATOR, and
NEWFIELD EXPLORATION COMPANY CHANGE OF CONTROL SEVERANCE PLAN COMMITTEE,

    Defendants.

## ORDER REMANDING DENIAL OF BENEFITS

In this case brought pursuant to 29 U.S.C. § 1132(a) of the Employee Retirement Income Security Act of 1974 ("ERISA"), Plaintiff Jarrid Franke ("Franke") challenges the decision of Defendants Fifth Amended and Restated Newfield Exploration Company Chance of Control Severance Plan ("Plan"), Newfield Exploration Company Change of Control Severance Plan Benefits Administrator ("Benefits Administrator"), and Newfield Exploration Company Change of Control Severance Plan Committee ("Committee") (collectively, "Defendants") to deny him severance benefits. (ECF No. 1.) The matter has now been fully briefed. (*See* ECF Nos. 23, 27, 31.) For the reasons explained below, the Court finds that Defendants' decision to deny Plaintiff severance benefits was arbitrary and capricious. Further, for reasons explained below, the Court remands this matter to the Committee for reconsideration under the proper standards as outlined

by the Plan and this Order.

## I.  BACKGROUND[1]

**A.     The Plan**

Newfield Exploration Company ("Newfield") was acquired in 2019.  Prior to the acquisition, the Newfield Board of Directors ("Board") adopted the Plan, which is intended to provide severance benefits to certain officers and employees ("Covered Employees") if terminated under specified circumstances following a change of control.  The Plan provides that prior to the date of a change of control, the Board would appoint the Committee to administer the Plan.  The Committee was to consist of at least three Covered Employees and was empowered to appoint a Benefit Administrator.

The Plan vests the Committee with broad powers, including the power to (i) make and enforce rules to administer the Plan, (ii) authoritatively interpret the Plan's language, (iii) determine a Covered Employee's right to benefits, and (iv) delegate any of its responsibilities under the Plan to others in writing.[2]  The Plan also provides that the Committee's "principal duty of the Committee to see that the Plan is carried out, in accordance with its terms, for the exclusive benefit of persons entitled to participate in the Plan."  The Board appointed five Covered Employees from different Newfield departments to the Committee prior to the change of control.

The Plan provides Covered Employees with "severance benefits only in the event

---

[1] The following factual summary is based on the parties' briefs and documents submitted in support thereof.  These facts are undisputed unless attributed to a party or source.  All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

[2] The Plan lists additional powers and provides that even its more complete list is not exclusive.  (ECF No. 24-1 at 74–75.)

of an 'Involuntary Termination.'" (ECF No. 24-1 at 2.) "An 'Involuntary Termination' occurs if [a Covered Employee] . . . terminate[s] for Good Reason, in any event, during the two-year period beginning on a Change in Control." (*Id.*)  A Covered Employee who voluntarily resigns other than for Good Reason has not been involuntarily terminated and is not entitled to benefits. (*Id.*) A "[m]aterial reduction in the nature or scope of [a Covered Employee's] aggregate responsibilities as compared to those [the Covered Employee] had immediately prior to the Change of Control" is Good Reason under the Plan. (*Id.* at 3.)

When making a claim for benefits, a Covered Employee first submits that claim to the Benefits Administrator. If the Benefits Administrator determines that the right to benefits is clear, the claim is processed "without resort to the Committee." However, if the right to benefits is not clear, then the Benefits Administrator will refer the claim to the Committee for its review and determination. Exercising its power to interpret the Plan and in an effort to ensure consistent benefits determinations, the Committee produced an "Interpretation Worksheet" with definitions of key terms and an "exercise" for identifying ways that the nature or scope of aggregate responsibilities can be reduced.

**B.    Plaintiff's Roles Before and After the Change of Control**

Plaintiff worked at Newfield for 14 years and was an Asset Manager immediately prior to Newfield's acquisition. Plaintiff is a Covered Employee under the Plan. As Asset Manager, Plaintiff was responsible for the Arkoma and Williston asset in North Dakota, including budgeting and long-term planning for those assets. He reported to the Regional Vice President and had 11 technical reports in two disciplines: geology and reservoir engineering.

3

Following the change of control Plaintiff was transferred to Manager, North Dakota on February 13, 2019.  According to Plaintiff, all other Newfield Asset Managers were transferred to Senior Manager positions.  Then on June 15, 2020, Plaintiff was transferred to Manager, Facilities and Water for the Anadarko asset.  In this position, he managed what Defendants describe as the Anadarko asset's "extremely complex" water function.  He reported to Mark Spicer, who Plaintiff asserts was also an Asset Manager at Newfield prior to the change of control.  (ECF No. 26 at 4.)  As Manager, Facilities and Water for the Anadarko asset, Plaintiff had six technical reports: five facilities engineers and one facilities analyst.  Plaintiff no longer reported to the Regional Vice President and had no independent spending authority.

After working in this new position for three weeks, Plaintiff submitted his resignation, asserting that a Good Reason event had occurred.  Subsequently, he filed a claim for severance benefits under the Plan.

**C.     Plaintiff's Claim of Benefits**

Plaintiff's argument is that he was involuntarily terminated when he resigned for Good Reason.  He asserts that his assignment as Manager, Facilities and Water for the Anadarko asset resulted in a material reduction in the nature and scope of his aggregate responsibilities as compared to his Asset Manager position immediately prior to Newfield's acquisition.  Elizabeth Willock, acting on behalf of the Benefits Administrator reviewed Plaintiff's claim and, after consulting with Spicer and "other leaders within [Plaintiff's] organization," concluded his right to benefits was unclear.  Therefore, Plaintiff's claim was referred to the Committee.

The Committee reviewed Plaintiff's claim on September 23, 2020, and the

discussion of his claim was memorialized in the Committee's meeting minutes. Matt Vezza, Vice President of Operations, attended a portion of the meeting to answer questions from the Committee regarding Plaintiff's position as Manager, Facilities and Water for the Anadarko asset. At Newfield, Plaintiff reported directly to Vezza; however, immediately prior to resigning Plaintiff reported to Spicer, who in turn reported to Vezza.

The minutes reflect that Willock "introduced for the Committee the materials provided by" Plaintiff. Committee member Doug Keithly then asked Vezza if Plaintiff's placement at the Anadarko asset "lessened" his "potential for advancement." Vezza responded that his placement increased Plaintiff's potential for growth and would have expanded his technical and business experience. Keithly then commented to Vezza and the other Committee members that Plaintiff's placement "seemed like a development role" for future leaders. Vezza agreed and explained that Plaintiff was selected because of his experience and proven abilities and that the role was critical for the success of the Anadarko asset. (ECF No. 24-1 at 109.)

The Committee then asked Vezza for additional information about Plaintiff's roles at Newfield and after the change of control. Vezza explained that Plaintiff was the Asset Manager for North Dakota and reported to the Vice President of Assets (*i.e.*, Vezza). After the change of control, Plaintiff was Manager, North Dakota, reporting to a Senior Manager. Vezza told the Committee that other than titling differences, Plaintiff's initial placement was "essentially the same position" as his Asset Manager role at Newfield. The Committee then asked Vezza to speculate as to why Plaintiff did not resign for Good Reason in 2019, to which Vezza responded that the positions were the same. Vezza then explained that the Anadarko asset is much bigger than the assets in North

Dakota and that he viewed the move from Manager, North Dakota to Manager, Water and Facilities for the Anadarko asset as lateral. Vezza then left the meeting. (*Id.*)

When the Committee turned to discussing the merits of Plaintiff's claim, Committee member Allen Donaldson commented that he agreed with Vezza that "high potential leaders should be rotated for development into positions like Manager, Facilities and Water, and that future executives would be expected to have this type of experience." Committee member Brooke Westall commented that she agreed, stating that "Newfield leaders would have viewed [Plaintiff's] positions as equivalent." Keithly commented again that Plaintiff's placement "would have benefitted him as he advanced his career," and Donaldson added that engineers without the kind of experience Plaintiff's Manager, Water and Facilities position would have provided would "cap-out" at the organization. After this discussion, the Committee voted on Plaintiff's claim and denied it unanimously. (*Id.*)

**D.  Plaintiff's Appeal**

After Plaintiff's claim was denied, he filed an appeal. The Plan provides that in the event of an appeal, he "shall have reasonable access to, and copies of, all documents, record, and other information relevant to the claim for benefits." (ECF No. 24-1 at 33.) Plaintiff's counsel submitted a request for:

> (1) all documents, records and other information relied upon for the benefit determination; (2) all documents, records and other information submitted, considered or generated without regard to whether such documents, records or other information were relied upon in making the benefit determination; (3) all documents, records or other information that demonstrates compliance with the standard claims procedure: and (4) any other information relevant to Mr. Franke's claim for benefits, such as (i) information about the last names, current job titles and duties of all former

6

> Newfield Asset Managers who were converted/transferred to Senior Managers at Ovintiv; (ii) the last names and job title(s) of the Ovintiv employee(s) currently responsible for all of the Williston and Arkoma assets, including subsurface and surface well performance and costs, subsurface-related planning and coordination with other groups such as drilling, completions, production and facilities; (iii) the number of direct reports reporting to each Senior Manager at Ovintiv; and (iv) the number of direct reports reporting to each job title identified in response to 4(iii) above. *See* Exhibit A to the Fifth Amended and Restated Plan, Claims Procedures at Section 6(d).

(*Id.* at 130.)

Willock responded to the document request by attaching redacted minutes from the Committee meeting determining Plaintiff's claim, a memorandum on Plaintiff's claim that Willock prepared for the Committee for the meeting, and the other materials the Committee used for its discussion of Plaintiff's claims. She did not, however, attach any other documents Plaintiff requested. Instead, she explained that the Plan only entitles him to information "relevant" to his claim for benefits and that a Department of Labor regulation interpreting Section 503 of ERISA narrowly defines "relevant" information. Specifically, Willock responded that Plaintiff is only entitled to documents or information (i) relied on in making the benefits decision, (ii) submitted, considered, or generated in the course of making the benefits decision, or (iii) demonstrating compliance with the Plan's claims procedures. (*Id.* at 131.)

On the merits of his appeal, Plaintiff argued that the Committee failed to properly consider the material reductions to both the scope and nature of his aggregate responsibilities as compared to his Asset Manager position. Plaintiff highlighted for the Committee the following facts, among others: (1) his reduced number of direct reports; (2) that he was the only Newfield Asset Manager not placed in a Senior Manager

7

position; (3) a screenshot from Workday, a human resources management tool, displaying his internal classification as a Senior Manager, despite not having an equivalent position; (4) his reduced exposure to senior executives; (5) his loss of independent spending authority; (6) and the Committee's focus on the business justifications for Plaintiff's placement, rather than the reduction of his aggregate responsibilities.  (*Id.* at 162–65.)

The Committee considered Plaintiff's appeal on January 20, 2021.  Willock introduced the materials provided by Plaintiff's counsel.  Keithly commented that he had reviewed all the materials and asked Willock about a conversation she had with Spicer regarding Plaintiff's Asset Manager and Manager, Facilities and Water positions.  Willock responded that after speaking with Spicer, she initially believed a Good Reason event may have occurred; however, after speaking with "other leaders" in Plaintiff's organization, she concluded his right to benefits was not clear and referred the claim to the Committee.  "Ms. Nichols then questioned if Mr. Spicer told [Plaintiff] he had good reason before he resigned."  Donaldson then remarked that "Spicer does not have authority to approve good reason claims."  Donaldson reminded the other Committee members that Plaintiff "had a lot of supervision" as Asset Manager and stated that Plaintiff would have had "more independent leadership and impact" if he had remained Manager, Facilities and Water for the Anadarko asset.  Prior to the vote on Plaintiff's appeal, Donaldson also commented that Plaintiff's placement as Manager, Facilities and Water "would set him up for further advancement."  The Committee denied Plaintiff's appeal. (*Id.* at 206–07.)

## II. STANDARD OF REVIEW

ERISA governs employee benefit plans. 29 U.S.C. §§ 1101 *et seq*. "When an individual covered by the plan makes a claim for benefits, the administrator gathers evidence, including the evidentiary submissions of the claimant, and determines under the plan's terms whether or not to grant benefits. If the administrator denies the claim, the claimant may bring suit to recover the benefits due to him under the terms of his plan." *Jewell v. Life Ins. Co. of N. Am.*, 508 F.3d 1303, 1308 (10th Cir. 2007) (internal quotation marks omitted; alterations incorporated). Federal courts have exclusive jurisdiction over such suits, as ERISA preempts most relevant state laws. 29 U.S.C. § 1144(a).

When the ERISA-governed plan at issue "gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," the plan administrator's denial of benefits is reviewed under an arbitrary-and-capricious standard. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). The Policy at issue here reserves such discretionary authority to the Committee. (ECF No. 24-1 at 25–26.) The parties, therefore, agree that the arbitrary-and-capricious standard applies. (ECF No. 26 at 8–9; ECF No. 27 at 18–20.)

The Tenth Circuit has described the arbitrary-and-capricious standard as follows:

> Indicia of arbitrary and capricious decisions include lack of substantial evidence, mistake of law, bad faith, and conflict of interest by the fiduciary. Substantial evidence is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the decisionmaker. Substantiality of the evidence is based upon the record as a whole. In determining whether the evidence in support of the administrator's decision is substantial, we must take into account whatever in the record fairly detracts from its weight.

> We give less deference if a plan administrator fails to gather or examine relevant evidence.

*Caldwell v. Life Ins. Co. of N. Am.*, 287 F.3d 1276, 1282 (10th Cir. 2002) (citations and internal quotation marks omitted; alterations incorporated).

### III.  ANALYSIS

**A.   The Benefits Decision**

"[I]n the substantial evidence analysis, the denominator (all available evidence) is as important as the numerator (the evidence relied upon to reach a decision)." *Lamont v. Conn. Gen. Life Ins. Co.*, 215 F. Supp. 3d 1070, 1080 (D. Colo. 2016). The Committee had the following evidence before it during the consideration of Plaintiff's initial claim and appeal:

- As Asset Manager, Plaintiff prepared quarterly reviews for executives but was not responsible for such reviews as Manager, Facilities and Water (ECF No. 24-1 at 202);

- As Asset Manager, Plaintiff had four levels between himself and the CEO but and additional level(s) as Manager, Facilities and Water (*id.* at 162);

- As Asset Manager, Plaintiff had 11 technical reports[3] but only 6 as Manager, Facilities and Water (*id.* at 202); and

- As Asset Manager, Plaintiff was responsible for the entirety of two assets but only a portion of a single asset as Manager, Facilities and Water (*id.* at 137–38); and

---

[3] Plaintiff's resignation letter to Spicer asserts he had 12 technical reports as Asset Manager; however, he later corrected this assertion. (*Compare* ECF No. 24-1 at 202, *with id.* at 162.)

10

- As Asset Manager, Plaintiff had independent spending authority but none as Manager, Facilities and Water (*id.*).

Two things should be apparent to the parties from the Court's identification and framing of these facts. First, the Court is focused on the relative scope and nature of Plaintiff's role immediately prior to the change of control and the role that allegedly resulted in a good cause event. This focus is mandated by the Plan's language. (*Id.* at 3.) Second, the Court has carefully reviewed the Committee's Interpretation Worksheet and notes that the specific facts Plaintiff cites in his resignation letter, supplemental letter, and appeal letter directly align with the analysis in that worksheet.

The Court has also reviewed the Committee's meeting minutes closely. While it is obvious that minutes are not a transcript, Defendants have described them as "detailed" and nowhere suggest they do not accurately or fully capture the substance of the Committee's discussions. (ECF No. 27 at 13.) The minutes reveal three critical flaws in the Committee's process: (1) a failure to consider the objectively material reductions in the nature and scope of Plaintiff's aggregate responsibilities; (2) improper comparison between Plaintiff's Manager, North Dakota and Manager, Facilities and Water positions; and (3) improper consideration of Plaintiff's Manager, Facilities and Water position as a "development role."

From the outset of his claim, Plaintiff cited specific reductions in his responsibilities as compared to his Asset Manager position. (ECF No. 24-1 at 101–102.) He noted that he was further removed from executives, both on the organizational chart and in terms of regular meetings with them. (*Id.*) He noted that his number of direct reports was cut approximately in half. (*Id.*) He noted that he was responsible for

11

merely a portion of a single asset rather than for all aspects of two distinct assets. (*Id.*) And he noted that he no longer had independent spending authority. (*Id.*) Each of these points align with concepts specifically identified by the Committee in its interpretation worksheet. (*See id.* at 87.) Yet it is not apparent from the meeting minutes that the Committee discussed any of these points.

To the extent the minutes reflect that such a discussion did occur, it was only in the context of comparing Plaintiff's Asset Manager position to the Manager, North Dakota position he was placed in immediately after the change of control. (*See id.* at 109.) In that context, Vezza clearly opined that the responsibilities of these two positions were "essentially the same." (*Id.*) Vezza then opined that he viewed the move from Manager, North Dakota to Manager, Facilities and Water as "lateral," from "a Development team manager to a Development team manager." (*Id.*) Not only does this comment compare the wrong positions, it merely addresses the place of those two positions within the organizational structure of the company without any analysis of Plaintiff's *aggregate responsibilities*. There is nothing in the record showing the Committee engaged in the kind of comparative analysis the Plan requires.

Instead, the record shows the Committee focused a great deal on Plaintiff's career development, which has nothing to do with whether his aggregate responsibilities were reduced or if any such reduction was material. Both Keithly and Donaldson asked questions or commented multiple times during the Committee's discussion that the Manager, Facilities and Water position was an advancement opportunity for Plaintiff. (*Id.* at 109–10, 206.) Not only is the opportunity for future growth highly subjective and difficult to define, neither the Plan's language nor the Committee's interpretation

worksheet indicate that it is a proper consideration at all. (*Id.* at 86–87.) Yet this consideration clearly permeated the Committee's discussions. For these reasons, the Court finds Defendants' benefits decision is not supported by substantial evidence.

Because the Court finds the Committee did not perform the proper analysis in the first instance, it remands Plaintiff's benefits claim. Though the Court concludes this course of action is more appropriate than awarding Plaintiff benefits outright, nevertheless it stresses the following upon reconsideration: (1) the Committee *must* consider the specific evidence Plaintiff submitted regarding the reduction in his aggregate responsibilities; (2) the Committee *must* compare the aggregate responsibilities of the Asset Manager position with the Manager, Facilities and Water position; (3) the Committee *must not* consider the Plaintiff's aggregate responsibilities as Manager, North Dakota; (4) and the Committee *must not* consider opportunity for growth or any other concepts[4] not related to Plaintiff's comparative aggregate responsibilities.

## B. Plaintiff's Documents Request

Plaintiff seeks an injunction requiring the Committee and the Benefits Administrator to produce the documents he requested that they refused to produce.

---

[4] This includes speculation about why Plaintiff did not resign when assigned as Manager, North Dakota. Nothing in the Plan's language suggests that a Good Reason event cannot have occurred simply because a separate potential Good Reason event had previously occurred. And while Plaintiff shared that his reason for not resigning after that initial placement was that he needed medical insurance while his wife underwent cancer treatment (ECF No. 24-1 at 162), Plaintiff's motivations are irrelevant. The question for the Benefits Administrator and then the Committee to answer was whether a Good Reason event had occurred, and in Plaintiff's case that question hinged on whether his aggregate responsibilities were materially reduced when comparing his Asset Manager position to his Manager, Facilities and Water position. Despite this, Committee members openly asked about and commented on irrelevant considerations, which appear to have been the driving force of the Committee's ultimate decision.

(ECF No. 26 at 23–25.)  He acknowledges, as Willock stated in response to his documents request, that a Department of Labor regulation narrowly defines documents "relevant" to his claim.  (*Id.* (referring to 29 C.F.R. § 2560.503-1(m)(8).)  Plaintiff argues this interpretation is "arbitrary and prejudicial to participants."  (*Id.* at 24.)  He then proceeds to make various policy arguments about why the regulation's narrow definition does not provide plan participants with "adequate access to the information necessary to determine whether to pursue further appeal."  (*Id.*)  Of course, the Department of Labor came to precisely the opposite conclusion when it adopted the regulation Plaintiff now essentially challenges in this lawsuit.  *Metzger v. UNUM Life Ins. Co. of Am.*, 476 F.3d 1161, 1167 (10th Cir. 2007).  The Court finds the Committee and Benefits Administrator are not the proper defendants for such a challenge and, because they relied on administrative regulations that have the force of law, the Court finds they did not breach any fiduciary duty to Plaintiff.  Therefore, the Court denies Plaintiff's fiduciary duty claim seeking document production.

Further, because Plaintiff's claim for statutory fines is premised entirely on the alleged failure to produce relevant documents, that claim is also denied.

**C.   Fees**

The Court is empowered "in its discretion" to "allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g).  The Court need not conclude that Plaintiff is a prevailing party to award costs—it need only find that he has achieved "some degree of success on the merits."  *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 254 (2010).  Achieving "some degree of success on the merits" means more than merely a "trivial success on the merits" or a "purely procedural victory."  *Id.*  The

14

Supreme Court has expressly rejected the assertion "that a court order remanding an ERISA claim for further consideration can never constitute 'some success on the merits.'"  *Id.*  While *Hardt* left open the question of "whether a remand order, without more, constitutes 'some success on the merits' sufficient to make a party eligible for attorney's fees," *id.* at 256, "[m]ost courts . . . have held that a remand to the plan administrator for review of a claimant's entitlement to benefits, even without guidance favoring an award of benefits . . . is sufficient." *Gross v. Sun Life Assurance Co. of Can.*,763 F.3d 73, 77 (1st Cir. 2014).  Therefore, awarding fees and costs to Plaintiff is well within the Court's discretion.

On this record, the Court finds that Plaintiff has achieved some degree of success on the merits.  As a consequence, and in the exercise of its discretion, the Court concludes that Plaintiff is entitled to attorney's fees and costs reasonably incurred in obtaining this remand Order.  The Court will therefore order supplemental briefing to assist it in determining the proper award of such fees and costs.

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Plaintiff's claim for benefits is GRANTED IN PART and DENIED IN PART, consistent with this Order;

2. Plaintiff's adverse benefits determination is VACATED and REMANDED consistent with this Order;

3. Plaintiff's claims for injunctive relief and statutory penalties are DENIED;

4. The parties Joint Motion for Determination (ECF No. 32) is DENIED AS MOOT;

5. The Clerk shall enter judgment consistent with this ORDER;

a. No later than **November 20, 2023** Plaintiff may file a bill of costs upon compliance with D.C.COLO.LCivR 54.1;

b. No later than **November 20, 2023** Plaintiff may file an appropriate motion for attorneys' fees pursuant to 29 U.S.C. § 1132(g) upon compliance with D.C.COLO.LCivR 54.3;

c. No later than **December 4, 2023** Defendants will file their response to Plaintiff's motion for attorney's fees;

d. No later than **December 11, 2023** Plaintiff will file his reply in support of his motion for attorney's fees; and

The Clerk shall terminate this case.

Dated this 20th day of October, 2023.

BY THE COURT:

_____
William J. Martinez
Senior United States District Judge